**STATE of Minnesota, Respondent,**

v.

**Jesus Torres VILLALOBOS, Appellant.**

No. C9–99–1189.

Court of Appeals of Minnesota.

July 11, 2000.

Review Denied Sept. 13, 2000.

Mike Hatch, Attorney General, St. Paul and Amy Klobuchar, Hennepin County Attorney, J. Michael Richardson, Assistant County Attorney, Minneapolis, for respondent.

John M. Stuart, Minnesota State Public Defender, Lyonel Norris, Assistant State Public Defender, Minneapolis, MN (for appellant).

Considered and decided by LANSING, Presiding Judge, RANDALL, Judge, and WILLIS, Judge.

## OPINION

RANDALL, Judge.

Appellant challenges his conviction of second-degree unintentional murder on several grounds. He asserts that evidence obtained during a court-ordered mental examination was improperly admitted during the trial and that there is insufficient evidence to support his conviction. In his pro se brief, he challenges the validity of the arrest, asserting that it was in violation of the Vienna Convention, and he asserts that his counsel was ineffective because his counsel failed to call a particular witness. We reverse and remand.

## FACTS

On October 9, 1997, appellant Jesus Torres Villalobos was at the American Indian Center in Minneapolis with several friends. Among the men in the group was Elias Solis–Holguin. Most of the men, including Villalobos and Solis–Holguin, had been drinking alcohol. Solis–Holguin was arguing with others in the group, including Villalobos.

The men left the American Indian Center and went to a nearby area known as "the jungle," where people would go to socialize, cook, drink, and play music. Villalobos was in a circle with three or four other men, and Solis–Holguin was walking around nearby. Villalobos then separated himself from the group, and he and Solis–Holguin headed toward some shrubbery. Witnesses in the area noted no sound of arguing or quarrelling between the two men until one of them was heard yelling, "No." One witness testified that he saw Villalobos stab Solis–Holguin. Two other witnesses testified that they did not see the stabbing but saw Solis–Holguin clutching his stomach while Villalobos was standing next to him holding a knife. Solis–Holguin died of a stab wound.

Villalobos was charged with second-degree intentional murder and second-degree unintentional murder. After a jury trial in which Villalobos asserted self-defense, he was found not guilty of second-degree intentional murder but guilty of second-degree unintentional murder. He now challenges this conviction, asserting that evidence obtained during a court-ordered competency examination pursuant to Minn. R.Crim. P. 20 was improperly admitted and that there is insufficient evidence to support his conviction. Villalobos further asserts, through a pro se brief, that his arrest was improper under the Vienna Convention and that his counsel's failure to call a particular witness constitute ineffective assistance of counsel.

## ISSUES

1. Did the district court commit plain error by admitting evidence obtained during a Minn. R.Crim. P. 20 examination?

2. Did the jury have sufficient evidence to support its verdict?

3. Were appellant's rights under the Vienna Convention violated?

4. Was appellant's trial counsel ineffective?

## ANALYSIS

### I.

■ If the record does not reflect a specific objection to the admission of evidence, an appellate court generally will not consider a challenge to the admission of that evidence. *State v. Tovar*, 605 N.W.2d 717, 726 (Minn.2000); *see also Bowen v. Arnold*, 380 N.W.2d 531, 536 (Minn.App. 1986) (holding objection would not be considered on appeal where appellant's attorney asked to approach bench, discussion held off the record, and no objection made on record), *review denied* (Minn. Mar. 27, 1986).

Here, no specific objection was made to the admission of the evidence in dispute. As the prosecutor began questioning Villalobos regarding statements made during the rule 20 examination, defense counsel asked to approach the bench. Defense counsel neither gave grounds for an objection nor did he state that he was making an objection. The conversation held at the bench was off the record. When cross-examination resumed, the prosecutor continued questioning Villalobos about his statements during the competency examination.

■ Absent a specific objection, this court will review a challenge to the admissibility of evidence only if the admission of such evidence was plain error. *State v. Patterson*, 587 N.W.2d 45, 52 (Minn.1998); *see also* Minn. R.Crim. P. 31.02 (stating court may consider plain errors affecting substantial rights on appeal even if not brought to district court's attention). To establish the existence of plain error, a three-prong test must be met: (a) there must be error, (b) the error must be plain, and (c) the error must affect substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998). If the appellate court concludes that these prongs are met, it must then determine whether addressing the error will ensure the fairness and integrity of the proceedings. *Id.*

■ We first determine whether error occurred here. Under Minn. R.Crim. P. 20, the prosecutor or defense attorney may request an examination to determine the defendant's competency or the court may choose to order an examination on its own initiative. Minn. R.Crim. P. 20.01, subd. 2. Unless the defendant makes his or her mental condition an issue in the case, "[n]o evidence derived from the examination shall be received against the defendant." Minn. R.Crim. P. 20.02, subd. 5.

The supreme court interpreted this rule in *State v. Lefthand*, 488 N.W.2d 799 (Minn.1992). In *Lefthand*, the defense attorney requested a mental examination of the defendant, and the examining psychiatrist found the defendant competent to stand trial. *Id.* at 800. Over defense objections, the district court permitted the prosecution to impeach the defendant's testimony during cross-examination by using statements the defendant made during the rule 20 examination. *Id.* In reversing, the supreme court held:

On its face, Rule 20 precludes the use of statements made by defendants in the course of the court-ordered mental examinations upon the issue of guilt. The rule reflects clear intent that such statements will only be used on the issues of sanity or competence. In addition to securing the defendant's Fifth Amendment right against self-incrimination, it is rather obvious that a contrary rule would undercut the usefulness of the Rule 20 examination.

*Id.* at 801.

Here, the defense *did not* raise issues of mental deficiency at trial. During cross-examination, the prosecutor questioned Villalobos about his statements to the rule 20 examiner. Villalobos admitted that he lied to the examiner when he repeatedly told her that he did not remember the incident. He testified that he lied to her because he had already lied to the police and wanted to keep a consistent story.

Similar to *Lefthand*, it was serious error to admit this evidence. We also conclude

that the error was "plain." *See United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) (stating "'[p]lain' is synonymous with 'clear' or, equivalently, 'obvious'" (citation omitted)). The rule iterated in *Lefthand* is settled and stems from specific language in the Minnesota Rules of Criminal Procedure, which state:

> No evidence derived from the examination shall be received against the defendant unless the defendant has previously made his or her mental condition an issue in the case.

Minn. R.Crim. P. 20.02, subd. 5. This rule is unambiguous. The prosecutor violated this rule.

■ We next consider whether this error substantially impacted the jury's verdict. This prong of the plain-error test "is satisfied if the error was prejudicial and affected the outcome of the case." *Griller*, 583 N.W.2d at 741. The burden is on the defendant to establish substantial impact. *Id.*

It is impossible, ever, to determine the exact reason for a jury's verdict. There is no provision in the rules to cross-examine individual jurors after a verdict as to what their thought processes and votes were on each individual issue; jury deliberations are confidential and inviolate. Here, Villalobos's testimony relating to the rule 20 examination went to his credibility. Villalobos conceded at trial that he stabbed Solis–Holguin but asserted that he acted in self-defense. Therefore, his credibility was vital to his defense. We conclude that the jury was prejudiced by admission of the rule 20 evidence. *Cf. State v. Roberts*, 296 Minn. 347, 353, 208 N.W.2d 744, 747–48 (1973) (holding where case's outcome hinged on whether jury believed defendant or victim, erroneous admission of evidence that defendant requested counsel when asked by officer whether he committed crime could have reasonably influenced verdict and was not harmless error).

Because we conclude that erroneous admission of rule 20 evidence had a substantial impact on the jury's verdict, we also conclude that the "fairness and the integrity of the judicial proceedings" would not be ensured absent a reversal and remand for new trial. *Griller*, 583 N.W.2d at 740.

**II.**

■ We need not address Villalobos's sufficiency-of-the-evidence argument or his assertion that his trial counsel was ineffective because we are reversing and remanding for a new trial. Additionally, we need not address his contention that because he was not notified of his right to contact the Mexican Consulate, his arrest violated the Vienna Convention. This issue was not raised to the district court, and Villalobos failed to present evidence, or to even make the assertion, that he is a Mexican citizen.[1] Thus, Villalobos has waived this issue. *See State v. Sorenson*, 441 N.W.2d 455, 459 (Minn.1989) (declining to rule on issue because issue was not raised in district court and there was insufficient information on record to allow review); *State v. Kelley*, 295 N.W.2d 521, 522 (Minn.1980) (holding issues not raised at trial are deemed forfeited).

**DECISION**

The district court committed plain error by admitting evidence at trial that was obtained during a Minn. R.Crim. P. 20 examination. The admission was error, the error was plain, and the error was substantial. Villalobos' due process right to a fair trial was affected.

**Reversed and remanded.**

---

1. Villalobos testified that he came to the United States from Mexico at age 13, approximately 17 years before the trial. His citizenship was not discussed at trial.